UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
INNOVATIVE SPORTS MARKETING, INC.,

                                  **REPORT AND RECOMMENDATION**
                Plaintiff,                    07 CV 2561 (ENV) (CLP)

      -against-

AQUARIUS FUENTE DE SODA, INC., *et al.,*

                Defendants.
----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On June 21, 2007, plaintiff Innovative Sports Marketing, Inc. ("plaintiff") filed this action against defendants Aquarius Fuente De Soda, Inc. d/b/a Aquarius Sports Bar ("Aquarius Sports Bar") and Fernando Muriel, individually and as the owner of Aquarius Sports Bar (collectively, "defendants"), alleging that defendants had engaged in the illegal theft of cable television services through the use of an electronically modified cable television decoder device to broadcast a 2004 soccer match between Peru and Argentina, in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605. (ECF No. 1).

Currently pending before this Court on referral from the district judge, is defendant Muriel's May 1, 2024, Motion to vacate the default judgment entered against him on September 30, 2009, arguing that the court lacked personal jurisdiction over him because he was never properly served with the Summons and Complaint in this matter. (ECF No. 22).

For the reasons set forth below, the Court respectfully recommends that defendant Muriel's Motion to vacate be granted.

1

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint filed with the court, plaintiff entered into a licensing agreement to distribute the June 30, 2004 soccer match between Peru and Argentina (the "Event"), via closed circuit television and encrypted satellite signal, to commercial establishments for a licensing fee. (Compl. ¶¶ 8, 9, 11). Plaintiff alleged that the defendants did not purchase the rights to intercept and exhibit this encrypted soccer match from the plaintiff, but intercepted and exhibited the same to patrons in Aquarius Sports Bar without legal authorization. (Id. ¶¶ 13, 15, 17). In light of the fact that the defendants never entered into a contract with plaintiff to broadcast the soccer match and were not authorized in any way to intercept, receive or transmit the soccer match, plaintiff filed this action seeking damages pursuant to 47 U.S.C. § 605(a).

After defendants failed to answer or otherwise respond to the complaint, plaintiff filed an application for entry of default, which was entered by the Clerk of Court on November 13, 2007. (ECF No. 7). Thereafter, plaintiff moved for a default judgment and that motion was referred to the undersigned to conduct an inquest on damages and prepare a Report and Recommendation. On July 15, 2009, this Court issued a Report and Recommendation that the motion be granted. (ECF No. 17). The district court adopted the Report and Recommendation on September 30, 2009 (ECF No. 19), and the Clerk entered judgment against defendants, awarding plaintiff $13,000 in statutory damages and $1,470 in costs. (ECF No. 20).

Defendant Muriel filed the instant Motion to vacate the default judgment on May 1, 2024, and the motion was referred to the undersigned by the district judge on June 11, 2025. On July 29, 2025, this Court held a hearing at which defendant Muriel and his wife, Alexandra Muriel,

testified and defendant presented evidence. Plaintiff relied primarily on the process server's affidavit of service, sworn to on July 9, 2007, and filed by plaintiff's counsel on July 12, 2007.

Based on the testimony of the witnesses and the evidence presented at the hearing, the Court respectfully recommends that the previously entered default judgment be vacated for lack of personal jurisdiction.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure sets forth the bases on which a court may vacate or amend a previously entered judgment or order:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). A motion under the Rule is committed to the sound discretion of the court, see In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir. 1981); see also Klapprott v. United States, 335 U.S. 601, 614-15 (1949); Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984), and although courts have held that the Rule should be liberally construed so as to do "substantial justice," see MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 755 (8th Cir. 1996); Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981), the Rule provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. See Rinieri v. News Syndicate Co., 385 F.2d 818, 822 (2d Cir. 1967); see also Ben Sager Chems.

3

Int'l, Inc. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977); Hoffman v. Celebrezze, 405 F.2d 833, 835 (8th Cir. 1969).

In seeking to vacate the default judgment, defendant Muriel relies on subsection (4) of Rule 60, arguing that the judgment is void because the Court lacked personal jurisdiction over the defendants because they were never properly served with the Summons and Complaint.

A. Sufficiency of Service

Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant.  See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).  A default judgment is considered "void" if the court lacks jurisdiction over the parties.  City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138 (2d Cir. 2011); see also Sartor v. Toussaint, 70 F. App'x 11, 13 (2d Cir. 2003).

Rule 4 prescribes the manner by which service of process must be effectuated in order to subject a defendant to the court's jurisdiction.  See Fed. R. Civ. P. 4.  It is well established that failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment.  See, e.g., Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); Cowder v. Administration for Children & Families, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for

4

default judgment where service had not been properly effectuated); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment).

Rule 4 provides, however, that service may be effectuated by "following state law . . . [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). In this case, service under Rule 4 may also be deemed proper if plaintiff complied with New York law. Since Muriel did not indicate any intention to waive service, the issue is whether the Summons and Complaint were served in compliance with the requirements of Rule 4 or New York law.

Under the Federal Rules of Civil Procedure, a natural person may be served by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(1), (2)(B). New York law provides for service upon an individual by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode . . .," to be followed by mailing a copy to the individual's "last known residence." N.Y. C.P.L.R. § 308(2) (McKinney 1994).

The technical requirements of Rule 4 and Section 308 notwithstanding, courts have recognized that the fundamental purpose of service is to give a defendant notice of the claims against them; due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). At its core, this standard is one of reasonableness. Id. Thus, courts

will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the documents mailed. See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 WL 1110419, at *6-7 (S.D.N.Y. May 18, 2004) (finding defendant could not void default because plaintiff made a good faith effort to serve defendant, and defendant received actual notice despite any "technical defect" in service (internal citations omitted)). Actual notice does not make up for improper service, however; it merely places the burden on the defendant "to establish that the purported service did not occur." Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005).

B. Challenge to the Process Server's Affidavit

Defendant Muriel represents in his Affidavit that he recently learned of the judgment entered against him in this case after receiving correspondence from a debt collector. (Muriel Aff.[1] ¶ 2). He then retained counsel to investigate and retrieve paperwork, thereby learning that a lawsuit had been filed against him in this court in 2007. (Id. ¶ 3; see also Harris Aff. ¶¶ 3, 4).

Defendant challenges the accuracy of the process server's Affidavit to the extent that it represents that on July 6, 2007, a woman, identified as "Jane" in the Affidavit and purporting to be Mr. Muriel's wife, was served with the Summons and Complaint at 24616 81st Avenue, Bellerose, N.Y. 11426 (the "Bellerose address"). (Ex. A to Harris Aff.,[2] ECF No. 22-3). On July 9, 2007, the process server's Affidavit indicates that he deposited copies of the documents in mail, addressed to defendant at the same Bellerose, N.Y. address. (Id.) According to the

---

[1] Citations to "Muriel Aff." refer to the Affidavit of Fernando Muriel to Vacate Default Judgment and Dismiss Action in The Entirety For Lack of Personal Jurisdiction, dated November 15, 2023 (ECF No. 22-2).
[2] Citations to "Harris Aff." refer to the Affirmation of Tamara Harris, Esq., in Support of Motion to Vacate Default Judgment and Dismiss Action in The Entirety For Lack of Personal Jurisdiction, dated April 30, 2024 (ECF No. 22).

process server's Affidavit, the woman served was white, with brown hair, approximately 40 years old, 5 feet and 7 inches in height, and weighing approximately 140 pounds. (Id.)

Defendant contends that the Affidavit of service is false and "an absolute fraud on the Court" for a number of reasons. (Harris Aff. ¶¶ 6-8, 9-18). Not only does Mr. Muriel's wife Alexandra not match the description of the woman identified by the process server as defendant's wife, but defendant contends that he and his wife had not lived at the Bellerose address since 2000, when the house was the subject of a foreclosure. (Id.; see also Tr.[3] at 4-5). During the hearing, Mr. Muriel conceded that he used to be the owner of the sports bar, Aquarius Fuente De Soda, Inc., which went out of business around 2004, "[s]omething like that." (Tr. at 13). The address of the bar – 3632 Main Street, Queens, N.Y. – was registered with the Secretary of State of New York while the business was operational. (Id. at 13-14). Mr. Muriel explained that the mailing address was 3632 Main Street, but that the property was subdivided with another store called "Lisa Page"; that store's address was 3634 Main Street. (Id. at 14).[4]

Mr. Muriel testified that on July 6, 2007 – the date of the purported service – he was residing at 85-36 168th Street in Jamaica, N.Y. 11432. (Id. at 15; see also Muriel Aff. ¶ 5). He conceded that in or around 1992, he purchased the home located at the Bellerose address and lived there with his wife and children for approximately eight years. (Tr. at 15). However, in 2000, the family lost the home for lack of payment; the property was sold to a new owner at a

---

[3] Citations to "Tr." refer to the transcript of proceedings before this Court on July 29, 2025 (ECF No. 27).

[4] On cross-examination, counsel for plaintiff asked a series of questions relating to the exterior of the bar, and showed him a series of photographs, which he identified, noting that "there was remodeling done." (Id. at 29; Pl.'s Exs. 1-4). When shown Exhibit No. 4, defendant identified an address number on the front of the building that says 3634, but he explained that the number did not reflect the address of defendant's business. (Tr. at 32). Plaintiff's counsel asked no further questions of Mr. Muriel.

7

public auction and Mr. Muriel and his family were forced to vacate. (Id. at 15-16). Defendants offered into evidence several Certified Deeds, which defendant identified for the Court. (Id., Def.'s Exs. A, B, C, D, E). The first Deed was the record showing the purchase of the Bellerose address home by Mr. Muriel in 1992. (Tr. at 16, Def.'s Ex. A). The second Deed is a Referee Deed, dated April 18, 2000, whereby the home was sold at auction. (Tr. at 16, Def.'s Ex. B). The defendants also offered into evidence three additional Deeds, showing subsequent transfers of the Bellerose address to other buyers in 2000 and 2001. (Tr. at 17-18, Def.'s Exs. C-E).

Mr. Muriel testified that after the foreclosure, the family moved to live with Mr. Muriel's mother-in-law in her home. (Tr. at 16). He testified that they lived there for about two or three years before moving a block away from his mother-in-law's home to a home at 85-36 168th Street, Jamaica, N.Y. (Id. at 18-19). To corroborate his testimony, defendant offered copies of his personal income tax returns for the years 2004, 2007, and 2008, listing defendant's home address at 85-36 168th Street. (Id. at 19-25, Def.'s Exs. F-I).

When asked to describe his wife, Mr. Muriel described her as "Hispanic. A little bit Asian looking. Short. You know, 5-foot." (Tr. at 26). He stated that the process server's description of a "5-foot 7-inches tall, [ ] white woman, weighing 140 pounds, with brown hair" did "[n]ot at all" describe his wife. (Id.) He also testified that he had been married "40-something years," was married to his wife in 2007, and that his wife's name is Alexandra, not "Jane." (Id.)

Mr. Muriel testified that he was never served with a summons and complaint in this action, and he denies ever speaking with an attorney for the plaintiff in the case in 2012. (Id. at 25). He testified that about a year and a half prior to the hearing, he received some mail and

8

learned about the lawsuit.  (Id.)  He then contacted Ms. Harris to determine what it was about.  (Id.)

The direct examination of Mr. Muriel concluded with Mr. Muriel denying the substance of the allegations against him.  (Id. at 25-26).

Following Mr. Muriel's testimony, Alexandra Muriel testified that she had been married to Mr. Muriel for 42 years, and that she lived with him at the Bellerose address until the foreclosure in 2000.  (Id. at 33).  After the foreclosure, the family lived in Ms. Muriel's mother's home at 84-79 168th Place, Jamaica, Queens.  (Id. at 33-34).  According to Ms. Muriel, she was living at 85-36 168th Street on July 6, 2007, when the process server claimed to have effectuated service at the Bellerose address.  (Id.)  She also testified that she is Hispanic and not white; she is 5 feet tall and weighed approximately 105 pounds in 2007.  (Id. at 34).  She denied ever receiving a summons and complaint in the case.  (Id.)  Plaintiff's counsel had no questions for the witness.  (Id. at 35).

In arguing that there had been proper service, plaintiff's counsel asserted that the photographs showing 3634 Main Street as the address of the building where the Aquarius Sports Bar was located demonstrated that the business had been properly served.  (Id.)  Therefore, counsel argued, even if Mr. Muriel was not properly served, the corporate defendant was served, and even if that would normally be "irrelevant," given the age of this case and the passage of time since service, the court should find that the individual defendant had been properly served.  (Id. at 35-36).[5]  Counsel argued that "you cannot wait 18 years to bring what amounts to an

---

[5] When the Court asked to see case law that says that, counsel's frank response was: "Judge, I would too."  (Id. at 36).

9

adversary – a . . . traverse hearing on a case . . . when you certainly knew about it 18 years ago when the business was served." (Id.)[6]

Counsel for defendant challenged the notion that service on the corporate entity was in fact proper, citing the absence of any evidence as to when the photographs were taken, and pointing to the fact that the proper address for service provided to the Secretary of State lists the street number for the bar as "3632," consistent with the testimony provided by defendant. (Id. at 38). Defendant's counsel noted that while the building may bear the number 3634, within the building, there were different subdivisions with different addresses, and, as defendant testified, he would not receive mail that went to 3634. Counsel also noted that all the process server had to do was check with the Secretary of State for the proper service address. (Id.)

Defendant argues that because Mr. Muriel was not properly served with the Summons and Complaint, the court lacked personal jurisdiction over the defendant and thus, the judgment entered against him is void. (Id. at 6-7). In response, plaintiff cites the passage of time and the unavailability of witnesses to prove either proper service or the underlying merits of the case, to argue that the prejudice to his client weighs against vacating the judgment. (Id. at 8-10).

---

[6] It should be noted that counsel for plaintiff indicated that he could not produce the testimony of the process server, who had retired five years ago and moved down South to the Carolinas or Florida. (Tr. at 8). The company that employed the process server at the time had no contact with him after 2022 and had no way of finding him. (Id.) Similarly, counsel indicated that the original investigator who witnessed the match is "nowhere to be found," nor is the former attorney who indicated in a record to the file that in 2012, the defendant contacted the office to make an arrangement, but nothing happened after that. (Id. at 9).

10

C. Analysis

As noted, "[i]t is well-established that a default judgment entered by a court that lacks personal jurisdiction over the parties is void" and can later be vacated. IdeaVillage Prod. Corp. v. A1559749699-1, No. 20 CV 4679, 2022 WL 204214, at *2 (S.D.N.Y. Jan. 24, 2022) (internal citations omitted); Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 699 (S.D.N.Y. 2021) (noting that a court is "powerless to proceed to an adjudication" without personal jurisdiction) (internal quotations and citations omitted); see also Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *9 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014). Whether personal jurisdiction exists—and, if not, whether the Complaint should be dismissed—falls within the scope of the instant referral. See Vanek v. Samsung EMS Co. Ltd., No. 23 CV 3127, 2024 WL 4894344, at *1 (S.D.N.Y. Nov. 26, 2024) (holding that a "[m]agistrate [j]udge is not required to accept that there is personal jurisdiction over the defendants" and adopting the recommendation to dismiss the case).

Under New York law, the process server's Affidavit creates a "presumption of proper service . . . in the absence of contrary facts." See Old Republic Ins. Co. v. Pacific Fin. Servs. of America, Inc., 301 F.3d 54, 57 (2d Cir. 2002); see also CSC Holdings, Inc. v. Fung, 349 F. Supp. 2d 613, 617 (E.D.N.Y. 2004). Although the plaintiff has the burden of demonstrating sufficiency of service in the first instance, Lian Qing Yu v. 58 Asian Corp., No. 16 CV 7590, 2018 WL 1415214, at *1 (S.D.N.Y. Mar. 20, 2018) (citing Commer v. McEntee, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003)), the New York courts have held that the process server's affidavit, indicating

11

that the party was properly served, constitutes "prima facie evidence of proper service[,] and the defendant's conclusory denial of receipt of the summons and complaint" has been found insufficient to raise an issue of fact. Sando Realty Corp. v. Aris, 619 N.Y.S.2d 140, 141, 209 A.D.2d 682, 682 (2d Dep't 1994). In Degonzague v. Entwistle, the process server served the defendants, husband and wife, by providing the husband with two copies of the pleadings at the marital residence in Castleton, New York. 2009 N.Y. Slip Op. 32275 (U), 2009 WL 3253808 (N.Y. Sup. Ct., Albany 2009). In moving to dismiss for lack of personal jurisdiction, the wife claimed that she and her husband were separated, and she provided an address in Albany, where she was residing. In denying the wife's motion to dismiss, the court held that she had failed to meet her burden of proof:

> The defendant offers little evidence to refute the facts affirmed in the affidavits of the process server. The defendant claims she is separated from her husband. The defendant does not establish when she separated from her husband and whether the separation was a trial separation or a legal separation. The defendant did not deny that 1486 Bame Road, Castleton, New York was the marital residence of her and her husband. Although the defendant stated that she moved to the City of Albany, she offers no proof indicating when she moved and when she established her alleged new residence. The defendant failed to offer any proof regarding her alleged change of residence such as notices to the post office regarding her mail, the Department of Motor Vehicles, bank statements, phone or utility bills[,] or the deed from the purchase of a home or a lease. Under these circumstances, the marital residence remained Gina Entwistle's "usual place of abode" for the purpose of service of process pursuant to [C.P.L.R.] § 308(2).

Id.

Here, by contrast, defendant Muriel has provided specific evidence to refute the process server's sworn Affidavit that he served the correct individual. Not only does defendant challenge the description of his wife, who allegedly accepted service on his behalf, but he also has demonstrated through a variety of documentary evidence that neither he nor his wife resided

12

at the Bellerose address after the foreclosure proceeding in 2000. The Referee Deed, dated April 18, 2000, documents that the house previously belonging to Mr. Muriel was sold at auction – more than seven years prior to the date of alleged service. (Compare Harris Aff., Ex. B, with ECF No. 2). Additional deeds were provided, showing that the house then changed hands again several times after that initial foreclosure sale. (Tr. at 16-18, Exs. C-E). Defense counsel provided further corroboration for Mr. Muriel's and his wife's testimony that they did not reside at the Bellerose address on the date of service, in the form of personal income tax returns for the years 2004, 2007, and 2008. (Tr. at 19-24, Exs. F-I). Each showed the Muriel family address as 85-36 168th Street. (Id.)

Defendants also provided evidence challenging the process server's assertion that he had served Mr. Muriel's wife at the Bellerose address. Based on the description of the woman served, whom the process server identified as "Jane," Mr. Muriel's wife, it is immediately apparent that the process server served someone other than Alexandra Muriel. Both Ms. Muriel and her husband testified that she was not a "white" woman, but was instead Hispanic; that she does not have brown hair; and that at the time of the alleged service, she weighed 105, not 140 pounds. (Tr. at 4, 26). More importantly, while weight and hair color may change over time, and someone might misperceive skin color, there is no question that Ms. Muriel is nowhere near 5 feet, 7 inches tall. She testified that she is 5 feet tall and indeed, her driver's license, issued on August 5, 2020, describes her height as being "5'-00." (ECF No. 22-5). These discrepancies, coupled with the outright denial of Ms. Muriel, which the Court credits, cast serious doubt on the credibility of the process server's Affidavit and strongly suggest that the process server served an entirely different individual.

13

In opposing the defendant's arguments, plaintiff argues that none of the documents presented demonstrate that defendant was not residing at the Bellerose address at the time of service. (Hooten Aff.[7] ¶¶ 10, 12). Given the documentation submitted at the hearing, the Court finds that the defendant has carried his burden to show that neither he nor his wife were residing at the Bellerose address at the time of service. In addition to the evidence indicating that the defendant was not residing at the Bellerose address, the evidence that the process server did not serve defendant's wife is compelling in its own right. While plaintiff's counsel represents that the process server is no longer available to testify, given the passage of time – almost 18 years between service in 2007 and the instant challenge (Tr. at 36) – it is unclear how that testimony would be helpful in rebutting the evidence presented by defendant at the hearing. Courts have held that minor discrepancies in physical descriptions do not invalidate service when the overall circumstances indicate the correct individual was served. New Century Mortg. Corp. v. Bosman, Jr., 2019 N.Y. Slip Op. 31242(U), 2019 WL 2095931, at *2 (N.Y. Sup. Ct., Suffolk 2019). Here, however, the discrepancies between the physical description provided by the process server and the reality of Ms. Muriel's characteristics are too numerous to be excused.

To the extent plaintiff argues that the corporate defendant was properly served, and thus Mr. Muriel was aware of the lawsuit (Tr. at 35), the parties dispute whether the business was properly served at 3634 Main Street. Mr. Muriel testified that the building where the bar was located was subdivided into different businesses, with the mailing address of the bar being 3632 Main Street. (Id. at 14). This is consistent with the address for service listed with the New York

---

[7] Citations to "Hooten Aff." refer to the Affirmation in Opposition of Paul J. Hooten, counsel to plaintiff, dated May 13, 2024 (ECF No. 23).

14

Secretary of State. (Id., ECF No. 22-6). The only evidence presented by plaintiff to suggest that the address of the bar was 3634 Main Street were several photographs showing the façade of the building, but with no information provided as to when the photographs were taken and no testimony provided to rebut defendant's assertion that there were several different mailing addresses assigned to businesses in the building. (Tr. at 36-37).

Even if service had been properly effectuated for the corporate defendant, that would not satisfy service upon the individual defendant. Nesterov v. Kvadro S. Corp., No. 18-CV-7200-MKB-SJB, 2021 WL 1236029, at *1 (E.D.N.Y. Mar. 11, 2021), report and recommendation adopted, 2021 WL 1238707 (E.D.N.Y. Apr. 2, 2021) (holding that "[s]ervice must be accomplished upon each and every defendant separately"); Feng Lin v. Quality Woods, Inc., No. 17-CV-3043-DLI-SJB, 2019 WL 1450746, at *8 (E.D.N.Y. Jan. 28, 2019); see also Weingeist v. Tropix Media & Ent., No. 20 CIV. 275 (ER), 2022 WL 970589, at *5 (S.D.N.Y. Mar. 30, 2022) (stating that the court "[could not] definitively conclude that service on the Individual Defendants was proper, but [found] that service on the Corporate Defendants was proper"). While New York law provides that if a corporate agent or officer who is also an individual defendant is served, that satisfies service for the corporate defendant, see Port Chester Elec. Co. v. Ronbed Corp., 284 N.Y.S.2d 9, 10, 28 A.D.2d 1008, 1009 (1967), the reverse is not supported by law. Pinela Jurado v. Sabor Hispano, Inc., No. 20CIV1104RPKVMS, 2021 WL 11690645, at *4 (E.D.N.Y. Aug. 5, 2021) (finding properly effectuated service on the corporation but not on the individual defendant who had decision-making power on behalf of the corporation).

Finally, plaintiff argues that no evidence had been provided to establish a meritorious defense on the part of the defendant, and that vacating the judgment at this time would prejudice

15

the plaintiff. (Tr. at 9). Under the circumstances, where service was not properly effectuated, the Court lacked jurisdiction to enter judgment against the defendant and the judgment is therefore void, regardless of the merits of any defense or the prejudice to the plaintiff.

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion to vacate the default judgment be granted and that plaintiff be given 30 days following approval of this Report and Recommendation to notify the court as to how it wishes to proceed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 26, 2025
Brooklyn, New York

                      /s/ Cheryl L. Pollak
                      Cheryl L. Pollak
                      United States Magistrate Judge
                      Eastern District of New York